**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4546**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

HERBERT JULIAN,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Margaret B. Seymour, Senior District Judge.  (2:16-cr-00551-MBS-4)

Submitted:  September 28, 2018                    Decided:  October 23, 2018

Before WYNN and FLOYD, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed in part and dismissed in part by unpublished per curiam opinion.

Andrew Mackenzie, BARRETT MACKENZIE LLC, Greenville, South Carolina, for Appellant.   Anna Katselas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Marshall Taylor Austin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal jury convicted Herbert Julian of knowingly failing to maintain an accurate Oil Record Book ("ORB") in violation of 33 U.S.C. § 1908(a) (2012), 18 U.S.C. § 2 (2012), and obstructing an agency proceeding in violation of 18 U.S.C. § 1505 (2012). The district court sentenced Julian to time served on both counts followed by a one-year term of supervised release. Julian's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that there are no meritorious issues for appeal, but questioning whether the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). We affirm in part and dismiss in part.

Julian's convictions arise out of his service in August 2015 as chief engineer of the Tanker Vessel Green Sky ("the Green Sky"), an oil and chemical tanker registered in Liberia. The Government presented evidence at trial that during his tenure as chief engineer of the Green Sky, Julian ordered the vessel's crew to conduct several illegal overboard discharges of oily water from the vessel's bilge tank and knowingly failed to record these discharges in the ORB, rendering the ORB inaccurate when the Green Sky entered the port of Charleston, South Carolina, on August 26, 2015.[*] Julian denied ordering any such illegal discharges or making false entries in the ORB.

---

[*] The Government conceded that because Julian was not the master of the Green Sky, he did not have a duty under 33 C.F.R. § 151.25(j) (2018) to accurately maintain the ORB, but argued that Julian was liable either for aiding and abetting the master's failure to accurately maintain the ORB under 18 U.S.C. § 2(a) or willfully causing the master's failure to maintain the ORB under § 2(b). Julian's conviction for corruptly impeding and obstructing the Coast Guard's investigation of the Green Sky in violation of 18 U.S.C. § 1505 stemmed from evidence at trial that Julian falsely denied the existence of, and (Continued)

Several crew members, including oiler Henry De Luna, testified about the three methods the crew members used to bypass the oily water separator and conduct the illegal discharges. The Coast Guard also took photographs and videos of the oilers demonstrating the discharge methods. One of these methods involved a modified "magic" valve. One of the Government's expert witnesses later testified that De Luna had told the expert in a June 2016 meeting that, during the Coast Guard's inspection of the Green Sky in Charleston, De Luna showed Coast Guard officials the magic valve, and the officials took a photograph of and sample from the magic valve. The Government never disclosed any photographs or samples of the valve, or the fact that De Luna had previously told the Government's expert that the Coast Guard had inspected the valve in August 2015. Julian contends that the Government's failure to disclose this evidence violated *Brady*.

> In *Brady*, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Therefore, a *Brady* violation contains three elements: the evidence was (1) favorable to the accused, (2) suppressed by the government, and (3) material to the verdict at trial. In determining what prosecutors must disclose, we make no distinction between exculpatory and impeachment evidence. Both information that undermines the prosecution's case and information that supports the defendant's case constitute *Brady* material that must be disclosed.

---

later tried to recover from the Coast Guard, the Green Sky's sounding log, which recorded the amount of oily water in the vessel's bilge holding tank.

*Nicolas v. Attorney Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016) (citations and internal quotation marks omitted). In order to satisfy the materiality prong, the Defendant "must show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 130 (internal quotation marks omitted).

We conclude that Julian has not shown that the relevant evidence was material. First, while Julian contends that he would have used the evidence to impeach De Luna, whom Julian characterizes as the Government's star witness, all of the Defendants vigorously impeached De Luna on multiple other grounds during cross-examination and in closing arguments. Moreover, Julian addressed the alleged withholding of evidence during his closing argument and used it to further attack the credibility of the Government's case. Finally, the district court instructed the jury that it was permitted, but not required, to infer that if the sample from and photograph of the magic valve existed, they may have been beneficial to Julian, and that the jury was also permitted to consider that inference in assessing the credibility of witnesses. In light of all the evidence and arguments in this case, this evidence cannot reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Accordingly, Julian has not established a *Brady* violation. For the same reasons, the district court did not abuse its discretion by denying Julian's motion for a mistrial based on the Government's alleged withholding of evidence. *See United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009) (standard of review).

4

As to Julian's appeal of his sentence, the district court sentenced Julian to time served, and Julian's one-year term of supervised release has expired. Because Julian has fully served his sentence and is no longer on supervised release, there is no longer an actual case or controversy between the parties as to the validity of the sentence. *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (internal quotation marks omitted)); *see Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) ("The case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate . . . ."). We therefore dismiss Julian's appeal of his sentence as moot.

In accordance with *Anders*, we have reviewed the entire record and have found no meritorious issues for appeal. We therefore affirm Julian's convictions. This court requires that counsel inform Julian, in writing, of the right to petition the Supreme Court of the United States for further view. If Julian requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on Julian.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid in the decisional process.

*AFFIRMED IN PART,*
*DISMISSED IN PART*

5